IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELIZABETH PRITCHARD-SLEATH, <br><br> Plaintiff, <br><br> vs. <br><br> RICHARD OPPER, in his official capacity as director of the Montana Department of Public Health and Human Services, KATHLEEN ZEECK, in her individual capacity, LARRY LEROUX, in his individual capacity, and the MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES, <br><br> Defendants. | CV 12-74-H-DLC <br><br><br> ORDER |

Defendants Richard Opper, Kathleen Zeeck, Larry LeRoux, and the Montana Department of Public Health and Human Services ("DPHHS") move to exclude the testimony of Plaintiff Elizabeth Pritchard-Sleath's expert witness, Richard Bartos. The Court will deny Defendants' motion.

**I.     Factual Background**

Plaintiff Elizabeth Pritchard-Sleath was hired as a psychology specialist at the Montana Developmental Center ("MDC") in April of 2009. MDC is a state

1

operated facility that provides 24-hour care for individuals with developmental disabilities who also struggle with severe behavioral issues, mental health issues, and other self-help deficits. Plaintiff's duties included providing individualized psychological assessment, diagnoses, and treatment services to clients, including one-on-one therapy sessions. In July of 2010, Plaintiff made an urgent recommendation to Defendant Kathy Zeeck, who was the superintendant of MDC at the time, that one of her clients (Client 1922) receive 1:1 supervision since she deemed him to be a suicide risk. Zeeck took some action, but did not go as far as Plaintiff believed was necessary. Plaintiff learned that Zeeck did not follow her recommendation and in July of 2010, she sent an email to several other DPHHS employees, including a representative of Disability Rights Montana ("DRM"), stating that Zeeck's response was "in strong opposition to [her] professional clinical judgment." DRM is a federally mandated organization with the authority to pursue legal, administrative and other remedies to ensure the protection of MDC clients. Plaintiff alleges that MDC administrators resented this communication to DRM, and that it served as the catalyst for Defendants' "campaign to discredit and discipline Plaintiff," and that this "retaliation against Plaintiff for contacts with DRM ultimately resulted in Plaintiff's termination by DPHHS." (Doc. 1 at ¶ 15.)

During her time at MDC, Plaintiff was disciplined several times, many of which she claims were in fact retaliation for her contact with DRM. In March of 2010, Plaintiff was counseled by Defendant LeRoux, her immediate supervisor, about inappropriately blurring the lines between acting as a client's advocate and acting as their therapist. LeRoux informally counseled her again in April of 2010 regarding contact with clients during non-work hours. In August of 2010, shortly after she sent her email about Client1922, Plaintiff was given a written warning for giving gifts to clients, which is prohibited by MDC policy. During the same month, Client 1797 reported to staff that Plaintiff had made repeated and unwanted telephone calls to him over the weekend, and that Plaintiff asked him to run away from MDC and live with her. Plaintiff was immediately placed on paid administrative leave while these allegations were investigated, and in November of 2010, the DPHHS issued an administrative decision upholding the suspension. Finally, at some point during the investigation related to Client 1797, Plaintiff provided her attorney with a confidential document pertaining to one of her clients. DPHHS suspended Plaintiff for two additional days as the result of this incident after denying her grievance.

In March of 2011, MDC was subject to a Centers for Medicare and Medicaid Services ("CMS") survey. The survey noted a multitude of deficiencies,

which resulted in an "immediate jeopardy" designation. Such a designation, if not remedied, could result in the complete loss of federal funding, which constitutes approximately 80% of MDC's total budget. Plaintiff's behavior and record of misconduct was one of the reasons for the immediate jeopardy designation. The CMS team determined that Plaintiff was a risk to clients.

DPHHS dismissed Plaintiff based on the behavior discussed herein, after providing her a chance to present her side of the story. Plaintiff then filed this action, bringing claims under § 1983 against Defendant Sorrell as Director of DPHHS and Defendants Zeeck and LeRoux, and against DPHHS for negligence, conversion, and violations of Montana's Wrongful Discharge from Employment Act ("WDEA").

Plaintiff has retained Richard Bartos as an expert witness to testify that the abuse, neglect, and exploitation investigations conducted by MDC did not meet the standard of care for conducting such investigations. Mr. Bartos was formerly employed by the Department of Public Health and Human Services ("DPHHS") as the Bureau Chief of the Adult Protective Services ("APS") agency. In the time since the motion to exclude was filed and fully briefed, the Court granted Defendants' motion for partial summary judgment, dismissing the bulk of Plaintiff's claims.

## II. Motion in Limine Standards

Courts have "wide discretion" in considering and ruling on motions in limine. *Trichtler v. Co. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004). But a Court will grant a motion in limine and exclude evidence only if the evidence is "inadmissible on all potential grounds." *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. 2010) (citations and internal quotation marks omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (citations and internal quotation marks omitted). "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.*

## III. Discussion

First, to address the elephant in the room: the Court's order for summary judgment has obvious implications for Mr. Bartos's testimony at trial, although the Court will not speculate as to what those might be. In ruling on motions in limine, this Court often defers its rulings until trial because it cannot rule in the abstract, and will not speculate as to what the contours of a plaintiff's case or the specifics

of an expert's testimony will be at trial. The Court's entry of partial summary judgment renders these questions even more mercurial in this case.

This Court has "the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1092 (N.D. Cal. 2004). Generally, "courts have declined to use a brightline rule to determine whether an expert should be disqualified." *Id.*

**A. Mr. Bartos's Relationship with Defendant DPHHS**

Defendants seek to exclude Mr. Bartos's testimony on several grounds, arguing first that he should be excluded because he was employed by Defendant DPHHS during the events at issue in this case. The first basis for this argument is the duty of loyalty imposed by Rule 1.9 of the Montana Rules of Professional Conduct, which sets forth a lawyer's duty to his former clients:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:

> (1) whose interests are materially adverse to that person; and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

This argument is unpersuasive. Although Mr. Bartos practiced law prior to working as Bureau Chief and drew on his experiences and expertise as an attorney while serving in that capacity, he was not a DPHHS lawyer and did not "formerly represent" the Department. Additionally, Mr. Bartos is not representing the Plaintiff in this action; he is acting as a testifying expert witness. The Court does not find Defendants' "consulting expert" argument persuasive; even if it did, the Model Rules do not require his disqualification. There is no indication that this litigation involves "the same or substantially related matter" as any specific issue Mr. Bartos handled while serving as Bureau Chief. The mere fact that he dealt with investigations similar to those that the MDC conducted regarding Plaintiff is far too attenuated a connection to constitute "the same or substantially related matter."

7

Defendants also contend that there is a possibility that Mr. Bartos could testify as to confidential DPHHS information that he was exposed to during his term of employment. This assertion is wholly unsupported by the facts. The mere fact that Mr. Bartos was employed by Defendant DPHHS and was privy to confidential information in his role as APS Bureau Chief does not mean that he will testify as to any of that information – let alone that he had any specific information that is relevant to the current litigation, which is based on the investigation of an employee of an entirely different agency within the DPHHS. All of the cases that Defendants cite relate to the disqualification of witnesses who possess, or who legitimately might possess, confidential information relevant to the pending litigation. This case does not involve the same abuse or neglect investigations in which Mr. Bartos was involved during his time with APS, and it is unreasonable to assume that he had any knowledge of confidential information relevant to the instant case. Finally, as Plaintiff asserts, the standard of care for conducting abuse and neglect investigations – the subject of Mr. Bartos's anticipated testimony – is not confidential information in and of itself.

The Defendants are correct that the Court's analysis must be context dependent (Doc. 41 at 10). In this context and at this time, disqualifying Mr. Bartos

on the basis of his previous relationship with the Defendant DPHHS is inappropriate.

Generally, this Court is hesitant to completely disqualify an expert unless the witness does not satisfy a *Daubert* analysis[1], or unless the expert's testimony would be cumulative. Instead, the Court prefers to utilize its orders on motions such as these to articulate the general boundaries it anticipates setting for the particular expert's testimony at trial. In this case, the Court will not permit any testimony related to any confidential information that Mr. Bartos was privy to as the result of his employment with the DPHHS.

## B. Appropriateness of Expert Testimony

Plaintiff argues that Mr. Bartos's testimony must be excluded – or at least severely limited – under Rule 702 because it contains inadmissible legal conclusions, and because it would not be helpful to the jury. The Court will address each argument in turn.

"[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1068 (9th Cir. 2002) *amended sub nom. Mukhtar v. California State Univ., Hayward*, 319 F.3d 1073 (9th Cir. 2003) (emphasis omitted). An expert may testify that a defendant did not adhere to an industry's

---

[1] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

standard practices, but must not be permitted to testify that a defendant violated the law. *See Wood v. Montana Dep't of Revenue*, 2011 WL 4348301 (D. Mont. Sept. 16, 2011) ("Thus, she may testify as to whether the Department deviated from standard human resources policies and practices in its attempt to comply with the law, but she cannot testify as to whether the Department in fact, violated the law.").

Defendants take issue with many of the statements Mr. Bartos made in his report and in subsequent depositions, claiming that they constitute legal conclusions. While the Court agrees that some of his statements do cross the line, it declines to use them as the basis for excluding Mr. Bartos entirely. At this time, it also declines to address and rule on each statement to which the Defendants now object because it is currently unaware of how this testimony will be raised at trial, if it is even raised at all. This approach is especially appropriate here, given the dramatically altered landscape of this case following the Court's recent order granting partial summary judgment.

The Court will consider any objections to Mr. Bartos's testimony at trial in the context of the case Plaintiff choses to present. However, in the interest of assisting the Plaintiff plot a safe course and minimizing objections at trial, the Court advises that it will not permit Mr. Bartos to express *any* conclusions of law,

not just those immediately placed at issue in Plaintiff's Amended Complaint. While Mr. Bartos may "refer to the law in expressing an opinion," *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004), he may go no further. Defendants raise valid objections as to several of the statements proffered by Mr. Bartos in his pretrial materials, and Plaintiffs would be well advised to focus his testimony in this area on the Department's policies and the general standards related to the type of investigation at issue.

     Next, Defendants argue that Mr. Bartos's testimony must be excluded because it is comprised largely of basic conclusions that the jury is capable of reaching without expert assistance. Defendants anchor this argument in Federal Rule of Evidence 702(a), which states that expert witness testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Predictably, and for the reasons articulated above, the Court will not exclude Mr. Bartos's testimony in its entirety on this basis, and will wait until the trial to rule on specific objections. However, the Court will once again offer its general opinion as to Defendants' objections, which are not without merit – especially those regarding inconsistencies, contradictions, and credibility. On the other hand, the Court does not view the specific techniques, standards, and resulting conclusions associated with investigating allegations of abuse and neglect

of persons with developmental disabilities as matters that are within scope of the average juror's knowledge or understanding.

For the reasons established herein,

IT IS ORDERED that Defendants' motion in limine to exclude testimony of expert Richard Bartos (Doc. 34) is DENIED.

Dated this 3rd day of March, 2014.

Dana L. Christensen, Chief District Judge
United States District Court